**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ONE WILLIAM STREET CAPITAL MASTER FUND LTD., *et al.*,<br><br>         Plaintiffs,<br><br>    -against-<br><br>JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, *et al.*,<br><br>         Defendants. | Case No. 1:26-cv-01622-JSR<br><br>ORAL ARGUMENT REQUESTED |

**SUPPLEMENTAL MEMORANDUM OF LAW OF FIFTH THIRD SECURITIES, INC.**
**IN SUPPORT OF MOTION TO DISMISS**

April 9, 2026

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................... 2

ARGUMENT .................................................................................................................................... 4

     I.       The federal securities fraud claims against FTS should be dismissed because Plaintiffs fail to allege the requisite connection between their claims and FTS. ........................................................................................................ 4

     II.     The Complaint fails to allege any facts supporting state securities fraud claims against FTS. ....................................................................................................... 6

     III.    The Complaint fails to allege facts sufficient to support a strong inference of scienter against FTS. ............................................................................................. 7

CONCLUSION ............................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**CASES**                                                                                  **Page(s)**

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
    544 F. Supp. 2d 199 (S.D.N.Y. 2008) ................................................................ 7

*In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021)................................................................. 7

*Allen v. Oakbrook Sec. Corp.*,
    763 So. 2d 1099 (Fla. Dist. Ct. App. 1999) ..................................................... 6

*Barr v. McGraw-Hill, Inc.*,
    710 F. Supp. 95 (S.D.N.Y. 1989) ..................................................................... 6

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)......................................................................................... 4

*Burton v. Wells Fargo Bank, N.A.*,
    738 F. Supp. 3d 272 (E.D.N.Y. 2024) .............................................................. 7

*DiVittorio v. Equidyne Extractive Indus.*,
    822 F.2d 1242 (2d Cir. 1987) ........................................................................... 7

*Dresner v. Utility.com, Inc.*,
    371 F. Supp. 2d 476 (S.D.N.Y. 2005) .............................................................. 7

*Ellington Mgmt. Grp., LLC v. Ameriquest Mortg. Co.*,
    No. 09 Civ. 0416, 2009 WL 3170102 (S.D.N.Y. Sept. 29, 2009)...................... 7

*Fed. Deposit Ins. Corp. v. Deutsche Bank Sec. Inc.*,
    No. 12-CV-4000, 2026 WL 346311 (S.D.N.Y. Feb. 9, 2026)............................ 5

*Fed. Deposit Ins. Corp. v. First Horizon Asset Sec. Inc.*,
    443 F. Supp. 3d 505 (S.D.N.Y. 2020) .............................................................. 5

*Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*,
    68 F. Supp. 3d 439 (S.D.N.Y. 2014) ................................................................ 8

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
    873 F.3d 85 (2d Cir. 2017) ............................................................................... 7

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) .............................................................. 7

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ................................................................................. 3

*Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*,
    919 F. Supp. 2d 321 (S.D.N.Y. 2013) ............................................................. 9

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020) ............................................................................ 10

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
    54 F.4th 82 (2d Cir. 2022) ..................................................................... 2, 5, 6

*Meridian Horizon Fund v. Tremont Grp. Holdings*,
    747 F. Supp. 2d 406 (S.D.N.Y. 2010) ........................................................... 10

*Morse v. Weingarten*,
    777 F. Supp. 312 (S.D.N.Y. 1991) ................................................................... 2

*In re Parmalat Sec. Litig.*,
    570 F. Supp. 2d 521 (S.D.N.Y. 2008) ............................................................. 6

*Plumbers' & Pipefitters' Loc. No. 562 Supplemental Plan & Tr. v. J.P. Morgan
    Acceptance Corp. I*,
    No. 08-CV-1713, 2012 WL 601448 (E.D.N.Y. Feb. 23, 2012) .......................... 5

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    96 F. Supp. 3d 325 (S.D.N.Y. 2015) ............................................................. 10

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008) .................................................................................... 2, 5

**STATUTES**

15 U.S.C. § 78j ....................................................................................................... 4

Colo. Rev. Stat. § 11-51-102 .................................................................................. 6

Fla. Stat. § 517.301 ............................................................................................... 7

N.J. Stat. Ann. § 49:3-51 ....................................................................................... 6

Private Securities Litigation Reform Act,
    Pub. L. No. 104-67, 109 Stat. 737 ............................................................. 1, 8

**FEDERAL RULES AND REGULATIONS**

17 C.F.R. § 230.144A ......................................................................................................... 2

17 C.F.R. § 240.10b-5 ........................................................................................................ 4

Fed. R. Civ. P. 8................................................................................................................. 1

Fed. R. Civ. P. 9.......................................................................................................... 1, 6, 7, 8

Fed. R. Civ. P. 12............................................................................................................... 1

**OTHER AUTHORITIES**

Asset-Backed Securities, 69 Fed. Reg. 26650 (May 13, 2004) ...................................... 5

Dissemination of Rsch. Materials Relating to Asset-Backed Sec.,
        1997 WL 51780 (Feb. 7, 1997)........................................................................... 5

Indictment, *United States v. Daniel Chu*, Cr. No. 25-579 (S.D.N.Y Dec. 15, 2025)..................... 2

Pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA"), Defendant Fifth Third Securities, Inc. ("FTS") files this supplemental brief in support of Defendants' Joint Motion to Dismiss. FTS writes separately because it is differently situated from its co-defendants: FTS served as a junior co-manager on a small subset of the least risky offerings at issue—the Class A Notes—and Plaintiffs do not claim they bought *any* Notes from FTS.

## PRELIMINARY STATEMENT

Defendant FTS joins in its entirety Defendants' Joint Motion to Dismiss ("Joint Motion") filed contemporaneously. That Joint Motion amply demonstrates that Plaintiffs' Complaint is fundamentally flawed and merits dismissal. FTS writes separately because it stands in a materially different position than its co-defendants, and the problems with Plaintiffs' impermissible group pleading are particularly acute as to FTS. To begin, where FTS participated, it served as a junior, secondary co-manager—the most peripheral participant in these offerings. Its role was further limited in two critical respects: (1) FTS only participated in five of the seven securitization trusts, and (2) as to those five offerings, FTS served as an Initial Purchaser of a vanishingly small fraction of only the Class A Notes—the most senior, lowest-risk tranche. FTS had no involvement with the subordinate Notes that form the primary basis for Plaintiffs' claims, and Plaintiffs do not claim that they purchased *any* Note of any kind from FTS.

This pleading failure is not accidental. With one limited exception discussed below, Plaintiffs' claims appear to arise from their status as a group of *subordinate* Noteholders (*i.e.*, investors who did not purchase the Class A Notes). Plaintiffs thus fail to satisfy a fundamental threshold requirement for bringing a securities fraud claim against FTS: It is axiomatic that a securities fraud plaintiff may assert claims based only on misrepresentations about the particular

1

securities they purchased. *See Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022). Yet the Complaint never identifies any securities purchased by any of the 30 investor Plaintiffs *from FTS*, much less when such purchases were made, what securities were involved, or how many were purchased. The few facts Plaintiffs do allege about their purchases contradict, rather than support, any plausible connection between FTS and Plaintiffs' injuries. On this basis alone, the claims alleging federal securities fraud, state securities fraud, and common law fraud against FTS must be dismissed. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008); *Morse v. Weingarten*, 777 F. Supp. 312, 316-17 (S.D.N.Y. 1991).

Second, the Complaint is fatally deficient as to any specific factual allegations against FTS that could support a strong inference of scienter. The Complaint contains only two, extremely thin allegations that relate to FTS. These two allegations do not come remotely close to supporting Plaintiffs' fraud claims, and accordingly, the claims must be dismissed on this basis alone.

## **FACTUAL BACKGROUND**

This case involves a long-running fraud scheme perpetrated by Tricolor and its executives dating back to 2018, pursuant to which Tricolor defrauded several financial institutions, including the Defendants here. *See generally* Indictment*, United States v. Daniel Chu,* Cr. No. 25-579 (S.D.N.Y Dec. 15, 2025), ECF 2. As a victim of this fraud, co-defendant Fifth Third Bank, N.A. disclosed a loss of between $170 and $200 million.

Plaintiffs assert claims against FTS arising from its participation as an Initial Purchaser and Co-Manager (not Bookrunner or Structuring Agent) in five "private placements" offered under Rule 144A, identified as Tricolor Auto Securitization Trust ("TAST") 2023-1; TAST 2024-2; TAST 2024-3; TAST 2025-1; and TAST 2025-2. (Compl. ¶ 45). As Plaintiffs acknowledge, "each Tricolor Trust issued Notes denominated Class A Notes, Class B Notes, Class C Notes, and so

2

forth, with different rights to repayment under the Indenture's priority of payments waterfall." (*Id.* ¶ 58).

FTS's participation in these securitizations was both limited in scope and confined to the least risky securities at issue. FTS served as an Initial Purchaser of a minuscule fraction of *only* the Class A Notes—the most senior tranche in the payment waterfall and, by design, the securities that presented the lowest risk to investors. FTS's Initial Purchases (and corresponding percentages) of the Securitizations were as follows:

- TAST 2023-1 ($6,947,000 of $138,940,000, or 5% of total Class A Notes);
- TAST 2024-2 ($6,851,000 of $167,680,000, or 4% of total Class A Notes);
- TAST 2024-3 ($6,870,000 of $179,800,000, or 3.8% of total Class A Notes);
- TAST 2025-1 ($6,667,000 of $228,080,000, or 2.9% of total Class A Notes); and
- TAST 2025-2 ($6,667,000 of $131,090,000, or 5% of total Class A Notes).[1]

Critically, FTS was not an Initial Purchaser of any of the subordinate notes that bear the first losses when the underlying collateral underperforms and that lie at the heart of Plaintiffs' damages claims. (*Id.* ¶ 113). Given FTS's peripheral role, it is not surprising that none of the Plaintiffs specifically pleads that it purchased *any* Note from FTS in *any* initial offering for *any* securitization trust for which FTS served as an Initial Purchaser. (*Id.* ¶ 63 ("The majority of those

---

[1] *See* Ex. A at SA-1 (TAST 2023-1 Note Purchase Agreement); Ex. B at SA-1 (TAST 2024-2 Note Purchase Agreement); Ex. C at SA-1 (TAST 2024-3 Note Purchase Agreement); Ex. D at SA-1 (TAST 2025-1 Note Purchase Agreement); Ex. E at SA-1 (TAST 2025-2 Note Purchase Agreement). The exhibits are attached to the Declaration of Marshall L. Miller in Support of the Motion to Dismiss. These documents may be relied upon at the pleading stage because they are integral to the private placement offerings at issue. "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)). Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document integral to the complaint, *id.* at 72, as is the case here.

Notes were purchased at initial offering from either JPMorgan or Barclays."); *see also id.* ¶¶ 127, 129, 133, 137 (detailing purchases from entities other than FTS)).

Given FTS's limited role, it is also not surprising that the Complaint is woefully short on specific allegations directed towards it. The Complaint contains only two specific factual allegations respecting FTS: (1) FTS should have recognized that *one* auto loan had been double-pledged to SPV-6, a remote structure affiliated with Fifth Third Bank's warehouse line, and to a securitization issued in October 2024 (TAST 2024-3) in which FTS participated as an Initial Purchaser, (*id.* ¶ 72); and (2) FTS "received a similar [audit] report" to the one provided to its co-defendants which supposedly contained "red flags" suggesting Tricolor's fraud, (*id.* ¶ 98). The Complaint fails to allege why or how FTS would have been aware of that *sole* identified instance of double-pledging or even allege that FTS had actual knowledge of any double-pledging at all. And as for the audit-related allegation, the Complaint is similarly conclusory, failing even to allege directly when FTS received the audit report or what information the audit report contained.

## **<u>ARGUMENT</u>**

### I.       **The federal securities fraud claims against FTS should be dismissed because Plaintiffs fail to allege the requisite connection between their claims and FTS.**

Plaintiffs fail to draw any meaningful connection between their claims and conduct by FTS. No surprise here: Plaintiffs' claims appear to arise overwhelmingly from losses on subordinate Notes that FTS never touched, rather than the Class A Notes for which FTS was a junior co-manager. Plaintiffs' attempt to circumvent this fundamental disconnect through group pleading illustrates why their Complaint must be dismissed.

Section 10(b) and Rule 10b-5 prohibit false statements made "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. The Supreme Court has construed that language to cabin liability "to actual purchasers and sellers of securities." *Blue*

4

*Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31 (1975) (citing *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952)). As a result, Plaintiffs must sufficiently plead they "bought or sold the security about which a misstatement was made in order to have standing to sue under Section 10(b)." *Menora Mivtachim*, 54 F.4th at 86. This bedrock principle of securities fraud law is referred to as the "purchaser-seller" rule. *Id.* at 85-86. In the context of asset-backed securities offerings, each Note class constitutes a separate and distinct security. *See, e.g.*, *Plumbers' & Pipefitters' Loc. No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp. I*, No. 08-CV-1713, 2012 WL 601448, at *7 (E.D.N.Y. Feb. 23, 2012) ("[E]ach tranche within an offering is an individual security that differs from other tranches."); *see also* Asset-Backed Securities, 69 Fed. Reg. 26650, 26688 n.212 (May 13, 2004) (proposed SEC rule explaining that "in the case of a multi-tranche registered offering of asset-backed securities, each tranche would be treated as a different security"); Dissemination of Rsch. Materials Relating to Asset-Backed Sec., SEC No-Action Letter, 1997 WL 51780, at *2 (Feb. 7, 1997) (similar).

Here, the primary harms Plaintiffs seek to vindicate derive from Notes other than the most senior, Class A Notes for which FTS served as an Initial Purchaser. (Compl. ¶ 113). The claims arising from those harms fail as a matter of law as to FTS and cannot be cured because they have no "proximate relation" to FTS. *Stoneridge*, 552 U.S. at 158-59; *cf. Fed. Deposit Ins. Corp. v. Deutsche Bank Sec. Inc.*, No. 12-CV-4000, 2026 WL 346311, at *5 (S.D.N.Y. Feb. 9, 2026) ("[E]ach tranche is a discrete security and . . . a plaintiff may only sue the underwriter of the specific tranche that the plaintiff purchased." (citation omitted)); *Fed. Deposit Ins. Corp. v. First Horizon Asset Sec. Inc.*, 443 F. Supp. 3d 505, 508 (S.D.N.Y. 2020) (similar). To the extent Plaintiffs allege any specific facts about Class A Notes, their allegations do not include FTS. Only one Plaintiff alleges it purchased Class A Notes in a securitization that involved FTS (TAST 2024-2),

and even that Plaintiff pointedly alleges that it bought those Notes from "JPMorgan," not FTS. (Compl. ¶ 129). In short, absent any meaningful connection to FTS, Plaintiffs' claims fail. *In re Parmalat Sec. Litig.*, 570 F. Supp. 2d 521, 524–26 (S.D.N.Y. 2008) (finding neither duty nor reliance where plaintiffs made no purchase from defendant in private placement).

Plaintiffs also fail to satisfy other basic Rule 9(b) pleading requirements. To state a securities fraud claim, a plaintiff must allege with particularity "the amount and price of the securities purchased by each plaintiff, the date and place of each purchase, and the losses suffered." *Barr v. McGraw-Hill, Inc.*, 710 F. Supp. 95, 97 (S.D.N.Y. 1989). Plaintiffs instead rely on a generalized conclusion that they "are investors that purchased over $230 million in current principal balance of Notes in Tricolor Trusts from Defendants and others in reliance on the integrity of the statements made by the Underwriter Defendants." (Compl. ¶ 6). This bare assertion falls far short of Plaintiffs' burden to allege which investor is an "actual purchaser[]" of which security and from which Defendant they bought. *Menora Mivtachim*, 54 F.4th at 85 (citation omitted). Without such allegations, Plaintiffs' claim should be dismissed.

## II.    The Complaint fails to allege any facts supporting state securities fraud claims against FTS.

Plaintiffs purport to bring state securities fraud claims in the Second, Third, and Fourth Causes of Action against "Defendants" as a group. Not surprisingly, Plaintiffs fail to specifically identify FTS at all, much less plead any specific and particularized facts implicating it. Despite Plaintiffs lumping together all Defendants, FTS does not understand Plaintiffs to assert these causes of action against it. If that assumption is not correct, these causes of action must likewise be dismissed. First, the claims are deficient under Rule 9(b). Second, these statutes require that a sale or offer must have occurred within the relevant state. *See* Colo. Rev. Stat. § 11-51-102(1); N.J. Stat. Ann. § 49:3-51(1); *Allen v. Oakbrook Sec. Corp.*, 763 So. 2d 1099, 1101 (Fla. Dist. Ct. App.

1999) (per curiam) (construing Fla. Stat. § 517.301). In other words, such state "blue-sky laws . . . only regulate[] transactions occurring within the regulating States." *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 156 (2d Cir. 2017) (citation omitted). Here, Plaintiffs do not allege that FTS offered or sold any securities in New Jersey, Florida, or Colorado. Accordingly, these claims should be dismissed against FTS.

### III.    The Complaint fails to allege facts sufficient to support a strong inference of scienter against FTS.

Plaintiffs' group pleading also highlights why Plaintiffs have not sufficiently pled scienter as to FTS. As the Second Circuit has clearly stated, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform *each defendant* of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (emphasis added); *see also Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 294 (E.D.N.Y. 2024) ("If multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them." (citation omitted)). A plaintiff is required to "satisfy Rule 9(b) as to each individual defendant, and cannot do so by making vague allegations about the defendants as a unit." *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 218 (S.D.N.Y. 2008) (citation omitted).[2] Here, Plaintiffs rely on impermissible group pleading and advance generalized assertions that all "Defendants" collectively "ignore[ed] red flags" and "buried their heads in the sand" as to alleged fraud by Tricolor. (Compl. ¶¶ 54, 120, 143-144). "Defendant clumping" is plainly insufficient to sustain a securities fraud claim against FTS. *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 493 (S.D.N.Y. 2005); *Ellington Mgmt. Grp.,*

---

[2] Plaintiffs must "state with particularity facts giving rise to a strong inference of scienter for *each defendant*." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 372 (E.D.N.Y. 2013) (emphasis added) (citation omitted); *see also In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 161 (S.D.N.Y. 2021) (scienter must be "separately pled and individually supportable as to each defendant"; it is "not amenable to group pleading" (citation omitted)).

*LLC v. Ameriquest Mortg. Co.*, No. 09 Civ. 0416, 2009 WL 3170102, at \*1 n.3 (S.D.N.Y. Sept. 29, 2009) (Rakoff, J.) ("[G]roup pleading does not comport with the particularity requirements of Rule 9(b) and the PSLRA.").

Given FTS's limited, secondary role in the offerings, Plaintiffs' group pleading is particularly egregious as to FTS. When defendants play differing roles in an offering, courts assess their obligations through "a sliding scale responsive to [each] defendant's role." *Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*, 68 F. Supp. 3d 439, 470 (S.D.N.Y. 2014) (applying this approach in the context of public offerings subject to more stringent obligations). Here, where Plaintiffs fail to allege scienter even as to the lead Bookrunner or Structuring Agent for each offering, their group pleading falters all the more as to FTS, which is situated far down the sliding scale.

> One paragraph, in particular, highlights the Complaint's fatal pleading deficiencies:
>
> Defendants solicited investors, including pitching the opportunity to invest in Tricolor Trusts at roadshow presentations to individual investors in connection with which Defendants prepared additional diligence materials and made additional representations regarding Tricolor and its performance, distributed the Offering Memoranda to investors in connection with sales of Notes, set the terms of these sales, and controlled these transactions, with investors making their purchasing decisions based upon Defendants' representations in the Offering Memoranda and any other representations made by Defendants in connection with the sale (i.e., in response to any questions asked by investors to verify the truth of the representations contained in the Offering Memoranda).

(Compl. ¶ 146). Setting aside the numerous flaws with Plaintiffs' arguments about the Offering Memoranda set forth in the Joint Motion, Plaintiffs do not allege that any specific FTS employee: (1) sold Notes, (2) solicited investors, (3) participated in roadshow presentations, (4) had input in roadshow presentations, (5) prepared additional diligence materials, (6) made additional representations regarding Tricolor and its performance, (7) distributed Offering Memoranda, (8) set the terms of sales, (9) controlled transactions, or (10) answered questions regarding the Offering

Memoranda. Nor do Plaintiffs allege when any of this activity occurred, or which Plaintiff was impacted with respect to any initial offering through which Plaintiff purchased Notes from FTS.

As noted above, the Complaint contains only two specific allegations that purportedly put FTS on notice of Tricolor's fraud: (1) FTS "should" have been aware that one automobile loan had been "double-pledg[ed]" to its warehouse line and one of the securitizations in which it participated, (*id.* ¶ 72); and (2) FTS received an audit report "similar" to one received by its co-defendants, (*id.* ¶ 98). Neither of these threadbare allegations individually or collectively comes close to raising a strong inference of scienter. "The pleading standard for federal securities fraud is rigorous, and to meet it, the red flags giving rise to an inference of recklessness must be particularized, specific, and together, egregious." *Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 344 (S.D.N.Y. 2013).

First, as to the single alleged double-pledged loan, the Complaint does not allege that anyone at FTS knew this fact or when they became aware of it. Indeed, the Complaint does not even allege that anyone at FTS had access to the underlying loan data in the securitization at issue or JPMorgan Bank's SPV-4 facility, such that they could have become aware of this instance of double-pledging. Plaintiffs do not—and cannot—plead that FTS received the underlying loan data for each of the private placements at issue. But even if anyone at FTS had actual knowledge of this single instance of double-pledging in one securitization, such an isolated incident could not have put FTS on notice of the broader fraud perpetrated by Tricolor, both before and after that instance of double-pledging.

Second, the Complaint's allegation that FTS received an audit report "similar" to one received by its co-defendants only underscores the paucity of specific allegations against FTS. The Complaint does not allege when such audit report was received; what specific information it

9

contained; to whom it was delivered; and who read it or may have done so. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 335 (S.D.N.Y. 2015), *aff'd*, 645 F. App'x 72 (2d Cir. 2016) ("[Plaintiffs] maintain that [auditor] knew of [company's] majority-ownership all along and nevertheless chose to disregard it . . . . Yet Plaintiffs do not identify what evidence or documents [auditor's] files contained, and their allegation that [auditor] had 'obtained' and 'reviewed' any such materials is unsupported and conclusory.").

Third, as to both allegations, Plaintiffs fail to identify anyone at FTS who would have acted with the requisite scienter to defraud Plaintiffs. This alone warrants dismissal, as a claim against a corporate defendant requires "facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (per curiam) (citation omitted).

Finally, because Plaintiffs' common law claims rise and fall with their federal securities fraud claims, they too should be dismissed. *Meridian Horizon Fund v. Tremont Grp. Holdings*, 747 F. Supp. 2d 406, 414 (S.D.N.Y. 2010) ("Since plaintiffs' Section 10(b) claims do not survive, plaintiffs' common law fraud claims, based on the same allegations of fact, must be dismissed as well.").

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Joint Motion, FTS respectfully requests that the Court dismiss the claims against it in Plaintiffs' Complaint with prejudice.

10

Dated: April 9, 2026

Robert J. McGahan (admitted *pro hac vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, N.W., Suite 1350
Washington, DC 20036
Tel: (202) 719-8298

Rebeccah L. Bower (admitted *pro hac vice)*
BRADLEY ARANT BOULT CUMMINGS LLP
Promenade Tower
1230 Peachtree Street NE, Suite 2100
Atlanta, Georgia 30309
Tel: (404) 868-2806

Marshall L. Miller
Sean Hecker
Jenna M. Dabbs
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883