**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| One William Street Capital Master Fund Ltd., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JPMorgan Chase Bank, National Association, *et al.*, <br><br> Defendants. | Case No. 1:26-cv-01622-JSR |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR JOINT MOTION TO DISMISS**

April 23, 2026

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 1

I.      Plaintiffs' Section 10(b) Securities Fraud Claim Should Be Dismissed............................ 1

      A.      Plaintiffs' Limited Amendments Do Not Plead a Strong Inference of Scienter ................................................................................................. 1

      B.      Plaintiffs' New Allegations Fail to Show That Any Defendant Was the "Maker" of a Challenged Statement, Nor Engaged in a Fraudulent Scheme ......... 5

      C.      Plaintiffs' New Allegations Do Not Plead Reliance on Any Statements by Defendants ................................................................................................. 8

      D.      Many of the Challenged Statements in the Offering Memoranda Are Not Actionable ................................................................................................. 8

      E.      For Thirteen Plaintiffs, the AC Fails to Plead Any Relevant Transactions............ 9

II.      The State Law Claims Should Be Dismissed ...................................................................... 9

      A.      Plaintiffs Fail to Plead Texas Securities Act Claims ........................................... 10

      B.      Plaintiffs Fail to Plead Fraudulent Transfer Claims ............................................ 11

III.      The AC Confirms That All Fraud Claims Against FTS Should be Dismissed ................ 14

CONCLUSION.......................................................................................................................... 15

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Aluminum Recovery Techs., Inc.* v. *ACE Am. Ins. Co.*,
  94 F.4th 561 (7th Cir. 2024) ...............................................................................................4

*Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)..............................................................................................................7

*City of Warren Police & Fire Ret. Sys.* v. *Prudential Fin., Inc.*,
  70 F.4th 668 (3d Cir. 2023) ..................................................................................................6

*Contemp. Indus. Corp.* v. *Frost*,
  2001 WL 34630639 (Bankr. D. Neb. Feb. 14, 2001) ..........................................................12

*Crystallex Int'l Corp.* v. *Petróleos De Venezuela, S.A.*,
  879 F.3d 79 (3d Cir. 2018)...................................................................................................13

*In re DNTW Chartered Accts. Sec. Litig.*,
  172 F. Supp. 3d 675 (S.D.N.Y. 2016)...................................................................................4

*In re Doral Fin. Corp. Sec. Litig.*,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008)...................................................................................1

*Dorsey* v. *Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ..............................................................................................11

*In re DSI Renal Holdings, LLC*,
  617 B.R. 496 (Bankr. D. Del. 2020) ....................................................................................12

*Dura Pharms., Inc.* v. *Broudo*,
  544 U.S. 336 (2005)..............................................................................................................9

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  761 F. Supp. 2d 504 (S.D. Tex. 2011) ................................................................................10

*In re Garrett Motion Inc. Sec. Litig.*,
  2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) .....................................................................7, 8

*In re Glob. Cord Blood Corp. Sec. Litig.*,
  2026 WL 444770 (S.D.N.Y. Feb. 17, 2026)..........................................................................7

*Hanson* v. *Frazer, LLP*,
  2013 WL 5372749 (S.D.N.Y. Sept. 24, 2013).......................................................................3

*In re HH Liquidation, LLC*,
 590 B.R. 211 (Bankr. D. Del. 2018) ...............................................................................12

*Iowa Pub. Emps.' Ret. Sys.* v. *Deloitte & Touche LLP*,
 973 F. Supp. 2d 459 (S.D.N.Y. 2013).................................................................................3

*Janus Cap. Grp., Inc.* v. *First Derivative Traders*,
 564 U.S. 135 (2011)........................................................................................................5, 6

*Menora Mivtachim Ins. Ltd.* v. *Int'l Flavors & Fragrances Inc.*,
 2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ...............................................................3

*Mullins* v. *Navotech*,
 2026 WL 865703 (S.D.N.Y. Mar. 30, 2026) ...............................................................14

*In re NewStarcom Holdings, Inc.*,
 608 B.R. 614 (D. Del. 2019)......................................................................................12, 13

*Ong* v. *Chipotle Mexican Grill, Inc.*,
 2017 WL 933108 (S.D.N.Y. Mar. 8, 2017) ....................................................................2

*Pac. Inv. Mgmt. Co. LLC* v. *Mayer Brown LLP*,
 603 F.3d 144 (2d Cir. 2010)............................................................................................7

*Pinnacle Oil Co.* v. *Triumph Okla., LP*,
 1997 WL 362224 (S.D.N.Y. June 27, 1997) ..........................................................10, 11

*Plumber & Steamfitters Loc. 773 Pension Fund* v. *Danske Bank A/S*,
 11 F.4th 90 (2d Cir. 2021) .............................................................................................9

*Puchtler* v. *Barclays PLC*,
 2025 WL 3495490 (2d Cir. Dec. 5, 2025) ....................................................................4

*S. Cherry St., LLC* v. *Hennessee Grp. LLC*,
 573 F.3d 98 (2d Cir. 2009)..............................................................................................4

*SEC* v. *Kelly*,
 817 F. Supp. 2d 340 (S.D.N.Y. 2011).............................................................................7

*SEC* v. *Tambone*,
 597 F.3d 436 (1st Cir. 2010) (en banc)...........................................................................6

*Sergeants Benevolent Ass'n* v. *Sanofi-Aventis U.S. LLP*,
 806 F.3d 71 (2d Cir. 2015)..............................................................................................4

*Special Situations Fund III QP, LP* v. *Deloitte Touche Tohmatsu CPA, Ltd.*,
 33 F. Supp. 3d 401 (S.D.N.Y. 2014)...............................................................................5

*In re Verizon Ins. Coverage Appeals*,
 222 A.3d 566 (Del. 2019) ...................................................................................13

*W. Va. Inv. Mgmt. Bd.* v. *Doral Fin. Corp.*,
 344 F. App'x 717 (2d Cir. 2009) ...........................................................................5

*Willis* v. *Marshall*,
 401 S.W.3d 689 (Tex. App. 2013).........................................................................11

*Zech Cap. LLC* v. *Ernst & Young Hua Ming*,
 636 F. App'x 582 (2d Cir. 2016) ............................................................................3

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................8

17 C.F.R. § 230.144A ..............................................................................................7

17 C.F.R. § 240.10b-5.........................................................................................5, 6

Fed. R. Civ. P. 9 .....................................................................................................14

Tex. Gov't Code § 4008.052(a).............................................................................10

Tex. Gov't Code § 4008.055(c).............................................................................10

## PRELIMINARY STATEMENT

As explained in Defendants' joint motion to dismiss (ECF 82 ("MTD")), Plaintiffs' securities fraud claims are premised on a fundamentally flawed theory that the primary victims of Tricolor's double-pledging scheme (Defendants here) are somehow the perpetrators of a scheme to defraud both themselves and TAST noteholders by supposedly "fail[ing] to stop" Tricolor's "intentional[] . . . fraud" sooner than they did. (Compl. ¶ 78.) Plaintiffs' fraud theory defies economic reason and black-letter securities law. Allegations that the "victim of [a] fraud" "could have discovered" the fraud by making further inquiries do not transform the victim into the perpetrator. *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 465, 467 (S.D.N.Y. 2008).

Rather than respond to Defendants' MTD, Plaintiffs chose to amend their complaint. But Plaintiffs' limited amendments do not cure the fundamental defect at the root of their claims. On the contrary, that exact same economically irrational theory of fraud remains the centerpiece of the Amended Complaint. (*See* Am. Compl. ("AC") ¶ 91; ECF 93-1 (redline).) Plaintiffs also cannot escape the fact that their "fraud" claims are premised entirely on the alleged falsity of statements in Offering Memoranda—statements that the Offering Memoranda explicitly say Defendants did not make. Thus, although Plaintiffs pick at the edges of some of the low-hanging flaws that Defendants articulated in their MTD—*e.g.*, identifying some (but not all) of the dates of Plaintiffs' alleged purchases from JPMorgan and Barclays (but identifying none from Fifth Third)—their claims remain fatally flawed and should be dismissed.

## ARGUMENT

### I.   Plaintiffs' Section 10(b) Securities Fraud Claim Should Be Dismissed.

#### A.   Plaintiffs' Limited Amendments Do Not Plead a Strong Inference of Scienter.

Because the initial complaint pled no viable motive (*see* MTD 16-18) and the AC does not add any new motive theory, the "strength of the circumstantial allegations" of "conscious

misbehavior or recklessness" must be "correspondingly greater." *Ong* v. *Chipotle Mexican Grill, Inc.*, 2017 WL 933108, at *14 (S.D.N.Y. Mar. 8, 2017). The MTD explained (at 18-28) why Plaintiffs cannot plead scienter on the theory that Barclays and JPMorgan might have discovered Tricolor's double-pledging if they made further inquiries in response to issues unrelated to double-pledging identified in the 2024 CBIZ report. In response, Plaintiffs nitpick three additional items in CBIZ's 2024 report that supposedly suggest JPMorgan and Barclays ignored "clear evidence of serious fraud." (AC ¶ 122.) None of those allegations is sufficient.

*First*, Plaintiffs observe that the CBIZ report stated JPMorgan "waived" CBIZ's review of certain repossession data to verify whether Tricolor accurately reported the amount of funds it received after auctioning or reselling repossessed vehicles. (AC ¶¶ 98, 105 (quoting ECF 83-4 at 11, 32).) But that waiver is not suggestive of anything nefarious, nor is it related to any purported double-pledging or fictitious loans. Rather, Plaintiffs conflate the issue of verifying "actual recoveries" *for repossessed vehicles* (ECF 83-4 at 11) with Plaintiffs' separate (and equally meritless) criticism of Tricolor ascribing "black book" "wholesale value[]" to vehicles that it *had not yet repossessed* when a borrower has defaulted (AC ¶ 105). Neither issue has any relevance to any claim in this action. (*See* MTD 24.) And even if they did, Plaintiffs' premise is wrong.

CBIZ merely observed that Tricolor's accounting policy of using the wholesale value as a stand-in until the vehicle gets resold might "skew" any hypothetical analysis that JPMorgan might wish to perform to predict "expected recoveries" on its warehouse line. (ECF 83-4 at 11; AC ¶ 105.) In other words, CBIZ did not warn JPMorgan and Barclays that Tricolor might be misreporting its actual recoveries on repossessed vehicles, as Plaintiffs wrongly claim. Nor did that observation about Tricolor's accounting policy remotely suggest *any misstatement in the Offering Memoranda*. As a result, there was nothing "concerning" about declining to make further

-2-

inquiries.  (AC ¶ 98.)  *See Zech Cap. LLC* v. *Ernst & Young Hua Ming*, 636 F. App'x 582, 584 (2d Cir. 2016) ("red flags" must provide notice that "audited company was engaged in wrongdoing *to the detriment of its investors*") (emphasis added).

Notably, Plaintiffs do not allege that Tricolor misreported the proceeds from resold vehicles after repossession.  As such, Plaintiffs also do not allege that the test they would have liked CBIZ to perform with the benefit of hindsight would have identified any issues, let alone the "precise misconduct" about double-pledging, as required to plead a "red flag."  *Menora Mivtachim Ins. Ltd.* v. *Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *25 (S.D.N.Y. Mar. 30, 2021); *see Iowa Pub. Emps.' Ret. Sys.* v. *Deloitte & Touche LLP*, 973 F. Supp. 2d 459, 465 (S.D.N.Y. 2013) (no scienter where "auditor fail[ed] to investigate certain red flags that, while themselves are not indicative of actual fraud, could, if pursued, lead to the discovery of fraud").

In sum, none of this has anything to do with Tricolor's double-pledging, and the hindsight criticism about any purported "waiver" of unrelated testing of repossession data cannot constitute a strong inference of scienter.  As this Court has held, allegations that if defendants had "follow[ed] th[e] trail, [they] would have discovered a series of suspicious facts that would have led them to discover" the company's actual fraud does not plead scienter.  *Hanson* v. *Frazer, LLP*, 2013 WL 5372749, at *5 (S.D.N.Y. Sept. 24, 2013).

*Second*, with respect to the minor discrepancies that CBIZ identified regarding the delinquency status of four loans, which was not a red flag (*see* MTD 23-24), Plaintiffs note that CBIZ recommended Barclays and JPMorgan "follow up" with Tricolor "to discuss the reason for these discrepancies." (AC ¶ 99.)  But the AC does not allege that Barclays and JPMorgan did not follow up with Tricolor about that issue, and even if the AC had made that allegation, it would not establish scienter.  The allegation that if Defendants "had exercised greater skepticism or

performed further procedures, [they] potentially could have discovered the fraud" is "not sufficient to allege scienter" in this Circuit.  *In re DNTW Chartered Accts. Sec. Litig.*, 172 F. Supp. 3d 675, 688 (S.D.N.Y. 2016); *see S. Cherry St., LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 112 (2d Cir. 2009) (holding that purported "red flags" did not constitute "obvious signs of fraud" and rejecting allegation "that 'if' [defendant] had asked various questions earlier, it would have" learned of fraud as insufficient to plead recklessness); *Puchtler* v. *Barclays PLC*, 2025 WL 3495490, at *2-3 (2d Cir. Dec. 5, 2025).

*Lastly*, Plaintiffs speculate that JPMorgan and Barclays must have interpreted CBIZ's report as "startling"—even though the CBIZ report never suggested any fraud by Tricolor, much less double-pledging—because "after the CBIZ report was finalized" JPMorgan and Barclays (but not Fifth Third) allegedly sold "mezzanine exposure" on their warehouse line.  (AC ¶¶ 111, 124.)  But that is evidence of nothing.  True, JPMorgan and Barclays "rais[ed] additional warehouse capital."  (*Id.* ¶ 124.)  But the addition of the mezzanine lenders did not reduce JPMorgan's or Barclays's exposure; it served only to expand further the total borrowing capacity under the warehouse line.  Accordingly, the involvement of the mezzanine lenders does nothing to salvage Plaintiffs' economically irrational theory.  It makes no sense that Defendants would expand Tricolor's borrowing capacity and also maintain their own massive exposure to a purported "Ponzi-like scheme" that was doomed to collapse.  (*Id.* ¶ 120.)

Even if the timing of the mezzanine lenders' involvement with the warehouse facility was somehow relevant (it is not), "mere correlation does not demonstrate causation."  *Sergeants Benevolent Ass'n* v. *Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 92 (2d Cir. 2015); *see Aluminum Recovery Techs., Inc.* v. *ACE Am. Ins. Co.*, 94 F.4th 561, 563 (7th Cir. 2024) ("*Post hoc ergo propter hoc* is the name of a logical fallacy . . . .  Whatever happens first *can* cause the next step

in a chain of events, but more than timing is needed to support an inference of causation.").  And stacking inferences upon inferences connected only by a logical fallacy cannot change that nothing in the CBIZ report "constitute[s] clear indicia of wrongdoing."  *Special Situations Fund III QP, LP* v. *Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 430 (S.D.N.Y. 2014).

In the end, the fundamental defect at the heart of Plaintiffs' fraud theory remains:  the "objectively more compelling" inference is that Tricolor "concealed its fraud from [Defendants], just as it concealed its fraud from [TAST] investors."  *W. Va. Inv. Mgmt. Bd.* v. *Doral Fin. Corp.*, 344 F. App'x 717, 720 (2d Cir. 2009); *see* MTD 27-28.

### B.        Plaintiffs' New Allegations Fail to Show That Any Defendant Was the "Maker" of a Challenged Statement, Nor Engaged in a Fraudulent Scheme.

*1. Maker Liability.*  Plaintiffs effectively concede that Rule 10b-5(b) applies only if the challenged statements were "made" by the defendant (*see* AC ¶ 202), which requires the defendant to be the person with "ultimate authority over the statement" who "takes credit" for it by signing the document.  *Janus Cap. Grp., Inc.* v. *First Derivative Traders*, 564 U.S. 135, 142-43 (2011).  As the MTD made clear (at 28-29), it is Tricolor, and not the Initial Purchaser Defendants, who made the challenged statements.  Each Offering Memorandum states that it "has been prepared by the Depositor [a Tricolor entity]" (ECF 83-2 at 7), and that "the Initial Purchasers make no representation or warranty as to the accuracy or completeness of such information" (*id.* at 6).

Because Plaintiffs cannot plead that the Initial Purchaser Defendants made the statements "in the Offering Memoranda," which is the sole basis for Count 1 (AC ¶ 202), they pivot to irrelevant distractions.  Plaintiffs now allege that unidentified individuals employed by JPMorgan and Barclays "prepared and disseminated" materials for roadshows that displayed "the loan characteristics drawn from the Offering Memorandum" (*i.e.*, the statements made by Tricolor) in a "format that was more digestible for prospective investors."  (*Id.* ¶ 80; *see, e.g., id.* ¶¶ 128-29 (as

to the One William Street Plaintiffs).)  Putting aside that this allegation is irrelevant to Plaintiffs' claim, which is based solely on statements in the Offering Memoranda (*id.* ¶ 202), JPMorgan and Barclays purportedly suggesting ways to format Tricolor's statements (much like a typesetter or a printer) does not mean that those Defendants had "ultimate authority over" any Tricolor statements.  *Janus*, 564 U.S. at 142.  As the Supreme Court stated, "[o]ne who prepares or publishes a statement on behalf of another is not its maker."  *Id.*; *see City of Warren Police & Fire Ret. Sys.* v. *Prudential Fin., Inc.*, 70 F.4th 668, 689 (3d Cir. 2023) ("*Janus* distinguishes between the act of 'making' a statement and the act of republishing it, such that 'publishing another's statement does not make someone the "maker" of the statement.'"); *SEC* v. *Tambone*, 597 F.3d 436, 446 (1st Cir. 2010) (en banc) ("Reading 'make' to include the use of a false statement by one other than the maker would extend primary liability beyond the scope of conduct prohibited by the text of Rule 10b-5(b).").

Similarly, Plaintiffs assert that unidentified Barclays and JPMorgan personnel made unspecified oral statements to some of the Plaintiffs about the TAST deals' capital "structur[es]," and Tricolor's "reconditioning facilities."  (AC ¶¶ 134, 146.)  But Plaintiffs do not identify what Barclays and JPMorgan said, nor do they allege that these unspecified statements were false.  It simply makes no difference that Barclays and JPMorgan made unspecified oral statements if none is alleged to be fraudulent.  To plead a Section 10(b) claim, Plaintiffs must allege Defendants made the statements alleged to be fraudulent—and here, those are the statements in the Offering Memoranda, all of which were made by Tricolor, not the Initial Purchaser Defendants.

**2. Scheme Liability.**  Plaintiffs try to bolster their allegation that the Initial Purchaser Defendants engaged in a "scheme" under Rule 10b-5(a) and (c).  (*Id.* ¶¶ 210-12.)  These arguments fail.  Plaintiffs allege Defendants "actively assisted Tricolor's fraud" (*id.* ¶ 212), but the Second

Circuit has squarely held that "[a]llegations of 'assisting,' 'participating in,' . . . and similar synonyms" are the textbook definition of "aiding and abetting" that the Supreme Court barred in *Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994). *Pac. Inv. Mgmt. Co. LLC* v. *Mayer Brown LLP*, 603 F.3d 144, 152-53 (2d Cir. 2010); *see SEC* v. *Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011) ("[T]o permit scheme liability 'to attach to individuals who did no more than facilitate preparation of material misrepresentations or omissions actually communicated by others . . . would swallow' the bright-line test between primary and secondary liability.").

Plaintiffs also assert the Initial Purchaser Defendants "disseminat[ed] the Offering Memoranda." (AC ¶ 212.) Even if dissemination of the Offering Memoranda may have "facilitated [Tricolor's] acts of fraud," it was not "affirmatively deceptive or manipulative" to disseminate Tricolor's statements. *In re Glob. Cord Blood Corp. Sec. Litig.*, 2026 WL 444770, at *21 (S.D.N.Y. Feb. 17, 2026). That is especially true because the Initial Purchaser Defendants explicitly stated in the Offering Memoranda that Tricolor had sole responsibility for all statements (including any alleged misrepresentations). Purchasing TAST notes from Tricolor and then reselling them to sophisticated institutions under Rule 144A on "fully disclosed" terms disclaiming that the Initial Purchasers were vouching for Tricolor's statements is "not an inherently deceptive act *by [the Initial Purchasers]*." *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at *17-18 (S.D.N.Y. Mar. 31, 2022) (emphasis added).[1]

---

[1] Even if disseminating the Offering Memoranda could be a basis for liability, Defendants did not disseminate the Offering Memoranda to any Plaintiff who purchased on the secondary market. Indeed, the Offering Memoranda warned any such secondary market purchasers to not rely on the Offering Memoranda. (*See* ECF 83-2 at 7 ("A prospective investor shall not be entitled to, and must not rely on, this offering memorandum unless it was furnished to such prospective investor directly by the Depositor or its agents.") (all caps omitted).) Thus, at a minimum, the scheme claim must be dismissed as to all secondary market purchases listed in AC App'x VIII.

**C.    Plaintiffs' New Allegations Do Not Plead Reliance on Any Statements by Defendants.**

The AC adds more than 30 pages of allegations about certain Plaintiffs' reliance (AC ¶¶ 126-94), but many of those allegations are about purported reliance on alleged oral statements and statements in roadshow materials that are not identified with any specificity or even alleged to be false, and are therefore irrelevant to Plaintiffs' Section 10(b) claim (*e.g.*, *id.* ¶¶ 134, 146). Moreover, for seven Plaintiffs—Crescent II Fund, L.P.; EF Securities LLC; the four "Ellington" entities; and St. Bernard Opportunity Fund I, Ltd.—the AC does not plead any individual reliance at all.

Nor have Plaintiffs cured their failure to plead reliance on any "deceptive acts" or fraudulent scheme *by the Initial Purchaser Defendants*. (*Id.* ¶ 214.) Plaintiffs allege they "rel[ied] on Defendants' dissemination of the Offering Memoranda" as somehow placing "JPMorgan's and Barclays's stamp of approval" on Tricolor's statements. (*Id.* ¶¶ 81, 214.) But as explained in the MTD (at 32), any such reliance was unreasonable as a matter of law because the Offering Memoranda clearly warned (in all caps) that the Initial Purchaser Defendants "MAKE NO REPRESENTATION OR WARRANTY AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION" in the Offering Memoranda. (ECF 83-2 at 6; ECF 83-5 at 7.) Plaintiffs cannot plead that they were deceived by the Initial Purchasers Defendants' conduct that was "fully disclosed." *Garrett*, 2022 WL 976269, at *17.

**D.    Many of the Challenged Statements in the Offering Memoranda Are Not Actionable.**

The AC now tries to meet the PSLRA's requirements to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1), but the reasons Plaintiffs identify do not render many of the challenged statements either false or misleading.

*First*, as shown in the MTD (at 34), a number of the statements Plaintiffs challenge are generic statements that are not material as a matter of law.  Because the generic nature of the statements is what makes them not actionable, the AC does not and cannot solve that problem.

*Second*, the reasons Plaintiffs identify for why many of the other challenged statements are actionable—which they have added to the tables in the Appendix to the AC at pp. 126-72—are the exact arguments that courts reject.  The MTD (at 34-36) detailed on a statement-by-statement basis why each of the arguments Plaintiffs make in the AC fails as a matter of law.  For every one of those statements, Plaintiffs improperly claim that disclosures were misleading because they failed to disclose "uncharged, unadjudicated wrongdoing," which is not the law in this Circuit.  *Plumber & Steamfitters Loc. 773 Pension Fund* v. *Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021).

### E.    For Thirteen Plaintiffs, the AC Fails to Plead Any Relevant Transactions.

Thirteen Plaintiffs are identified in the "Parties" section of the AC but are not alleged to have purchased any TAST notes.  (*See* AC App'x VIII at 172-81.)[2]  Those thirteen Plaintiffs should be dismissed for failure to plead an Article III injury in fact, or a purchase or sale of a security or loss causation.  *See Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 341-42 (2005).

### II.    The State Law Claims Should Be Dismissed.

The AC's new allegations relate only to two categories of the state law claims:  (i) the new claims under the Texas Securities Act ("TSA"); and (ii) the fraudulent transfer claims.  Even if the Court accepts supplemental jurisdiction over those claims—which it should not if it dismisses the sole federal Section 10(b) claim (*see* MTD 36)—those claims should be dismissed on the merits.

---

[2] Those thirteen Plaintiffs are:  Crescent II Fund, L.P.; EF Securities LLC; the four "Ellington" plaintiffs; St. Bernard Opportunity Fund I, Ltd.; OWS Credit Opportunity I, LLC; Clear Haven Investment Fund LP; Clear Haven Investments LLC; Clear Haven Ultra Short Investment Grade Bond Fund LP; Florida Casualty Insurance Company; and Superior Risk Solutions (SAC) Ltd.

### A.    Plaintiffs Fail to Plead Texas Securities Act Claims.

The AC alleges two new claims under the TSA:  (i) the Frost Plaintiffs assert a primary liability claim against JPMorgan (AC ¶¶ 237-41), and (ii) all Plaintiffs allege that the Initial Purchaser Defendants aided and abetted Tricolor's fraud (*id.* ¶¶ 243-48).  Both claims fail.

*1. Primary Liability.*  The TSA imposes liability on persons who "offer[] or sell[] [a] security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading."  Tex. Gov't Code § 4008.052(a).  This claim should be dismissed on the same grounds that the other state law claims should be dismissed, including because, as shown above and in the MTD, the AC fails to plead actionable misstatements.

*2. Aiding and Abetting.*  The TSA imposes liability on "[any] person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security."  *Id.* § 4008.055(c).  As an initial matter, the AC is entirely unclear who it was that Defendants allegedly aided and abetted.  The AC simply lumps together various Tricolor-related parties and people without identifying the role of each entity or person, which are different.  (*See* AC ¶ 244.)

Moreover, the TSA cannot apply to non-Texas Plaintiffs (*i.e.*, all Plaintiffs other than the Frost Plaintiffs) who purchased TAST notes outside of Texas issued by a Delaware trust and sold by non-Texas Initial Purchasers.  The only Texas connection Plaintiffs identify is that the TASTs were controlled by individuals in Texas who perpetrated the double-pledging scheme.  (AC ¶ 243.)  But the court in *Enron* rejected that same kind of argument, explaining that "[i]t is not the global scheme" that matters, "but the specific [] Certificate purchases," and holding that the TSA did not apply where the certificates were neither issued, sold, nor purchased in Texas.  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 554 (S.D. Tex. 2011); *see Pinnacle Oil Co.*

-10-

v. *Triumph Okla., LP*, 1997 WL 362224, at \*2 (S.D.N.Y. June 27, 1997) (TSA inapplicable where Plaintiffs "do not identify any specific fraudulent statements that were allegedly made in Texas").

The aiding and abetting claim also should be dismissed because, as shown above and in the MTD, the AC fails to plead "scienter." *Dorsey* v. *Portfolio Equities, Inc.*, 540 F.3d 333, 344 (5th Cir. 2008). In addition, the AC fails to plead that Defendants "rendered substantial assistance in a primary violation." *Willis* v. *Marshall*, 401 S.W.3d 689, 704 (Tex. App. 2013). Plaintiffs merely allege that Defendants (i) participated in "structuring" the capital structure of the various tranches of notes (features of the notes that Plaintiffs do not criticize), (ii) "disseminat[ed]" the Offering Memoranda "to [their] customers," and (iii) "solicit[ed] [their] customers to purchase the Notes." (AC ¶ 246.) None of this supports the allegation that Defendants materially "aided and abetted Tricolor's misstatements and omissions in the Offering Memorandum" (*id.* ¶ 245), especially given that Defendants disclaimed making any "representation or warranty as to the accuracy or completeness of [the] information" in the Offering Memoranda (ECF 83-2 at 6), and there are no specific allegations that Fifth Third Securities, Inc. ("FTS") structured the tranches of notes, disseminated the Offering Memoranda, or solicited customers (AC ¶¶ 78-82, 126-194). *See Willis*, 401 S.W.3d at 704 (rejecting aiding and abetting claim against accountant in part because its "disclaimer letters . . . warned . . . that it had not audited or reviewed the financial statements").

### B. Plaintiffs Fail to Plead Fraudulent Transfer Claims.

As explained in the MTD (at 39-45), Plaintiffs' fraudulent transfer claims are incompatible with every aspect of fraudulent transfer law: the TAST trusts—the only entities to which Plaintiffs allege any debtor relationship—did not receive Plaintiffs' cash that was allegedly fraudulently transferred; allegations that Tricolor put less valuable receivables in the TAST trusts than what was disclosed is a fraudulent inducement claim, not a fraudulent transfer claim; paying off an

antecedent debt is not a fraudulent transfer; and the TAST trusts were not, and in fact could not be, insolvent.  The AC fails to fix these fundamental deficiencies.

**1. *Actual Fraudulent Transfer.***  Conceding that the TAST trusts never received the cash payments on which their fraudulent transfer claims are premised (*see* MTD 41-42), Plaintiffs instead add new allegations that the cash transfers from the Initial Purchasers to the Tricolor Depositor to the Tricolor Servicer/Sponsor (an entity currently in bankruptcy) and then to the Tricolor warehouse SPV should be collapsed into a single "transaction," given the "economic reality is that the Tricolor Trusts transferred funds raised from sale of the Notes to the warehouse SPVs in exchange for the receivables."  (AC ¶¶ 64-65, 264.)  Plaintiffs' "collapsing" theory collapses in on itself, and cannot rehabilitate their fraudulent transfer claims.

*First*, a court may "review the entire transaction and collapse it as to all participants" only if all participants are parties to the action.  *Contemp. Indus. Corp.* v. *Frost*, 2001 WL 34630639, at *9 (Bankr. D. Neb. Feb. 14, 2001); *see In re NewStarcom Holdings, Inc.*, 608 B.R. 614, 622 (D. Del. 2019) (same).  But Plaintiffs have not named as defendants in this action any of the relevant Tricolor entities that actually transferred "cash"—presumably because doing so would underscore that the "clawback" claims Plaintiffs are pursuing can only be brought in the bankruptcy action, not in this action.

*Second*, "the use of the collapsing doctrine to re-characterize the parties to a transaction" is foreclosed by Delaware law.[3]  *NewStarcom*, 608 B.R. at 622; *see In re DSI Renal Holdings, LLC*, 617 B.R. 496, 505 (Bankr. D. Del. 2020) (collapsing "does not expand the property rights" of the debtor); *In re HH Liquidation, LLC*, 590 B.R. 211, 269 (Bankr. D. Del. 2018) ("The collapse doctrine does not allow the court to collapse separate entities, or pierce the corporate veil.").

---

[3] Although Delaware law applies, both Delaware and Texas adopted the Uniform Fraudulent Transfer Act, which moots any choice-of-law concerns.  (*See* MTD 39 n.13.)

Because Delaware courts do not lightly "disregard the separate legal existence of corporations," Plaintiffs cannot assert a fraudulent transfer claim based on the "transfer by a non-debtor." *Crystallex Int'l Corp.* v. *Petróleos De Venezuela, S.A.*, 879 F.3d 79, 86 (3d Cir. 2018).

*Third*, even if the Court accepts Plaintiffs' argument and collapses the separate transactions at issue here, Plaintiffs' claim still fails because the only "asset" of the TAST trusts is the "receivables." The focus of fraudulent transfer law is "whether . . . 'property of a debtor' was 'transferred'" and thus put out of reach of creditors (here, TAST noteholders). *NewStarcom*, 608 B.R. at 622-23. Because the receivables were the sole asset from which noteholders had a right to payment (*see* AC ¶¶ 276-77), the only transfers that TAST noteholders have standing to challenge are transfers that "improperly mov[ed] [the receivables] beyond [Plaintiffs'] reach." *In re Verizon Ins. Coverage Appeals*, 222 A.3d 566, 577 (Del. 2019). Plaintiffs' claim that a separate entity to which it alleges no debtor relationship—the Tricolor Depositor—used the proceeds from the sale of TAST notes to buy receivables that were less valuable than Plaintiffs were led to believe is an ordinary fraud claim, not a fraudulent transfer claim. (*See* MTD 43.)

**2. Constructive Fraudulent Transfer.** The only new thing Plaintiffs have to say about their constructive fraudulent transfer claim is the conclusory allegation that each TAST trust was "balance sheet insolvent, inadequately capitalized, and unable to pay its debts as they came due" because a "meaningful portion of the receivables" put into the TASTs on the day the transactions closed "were substantially impaired, double-pledged to other parties, or entirely fictitious." (AC ¶ 276.) But this conclusory allegation does not fix the fatal problems identified in the MTD. For one, Plaintiffs' conclusory allegation of insolvency cannot be squared with the fact that the TASTs had made payments to noteholders (some for several years) before Tricolor declared bankruptcy. (MTD 44.) For another, the mere fact that the receivables were less valuable than advertised

-13-

cannot render a passthrough entity like the TAST trusts "insolvent, inadequately capitalized, and unable to pay its debts as they came due" (AC ¶ 276), because their sole obligation is to pass along borrowers' payments of principal and interest on the underlying receivables (whatever they may be), without any liability or obligation to make up for any shortfall.  (MTD 45.)

### III.    The AC Confirms That All Fraud Claims Against FTS Should be Dismissed.

All claims against FTS should be dismissed because Plaintiffs now concede in the AC that none of the Plaintiffs purchased TAST notes from FTS in any Trust.  (*See* AC App'x VIII at 172-81.)  Indeed, while Plaintiffs have attempted to dress up the AC with irrelevant facts concerning JPMorgan and Barclays, they have included *no* additional specific facts concerning FTS relating to the subject Trusts.  Instead, Plaintiffs continue to rely on impermissible "group pleading" and Defendant "clump[ing]" in contravention of Rule 9(b).  *Mullins* v. *Novatech*, 2026 WL 865703, at *3 (S.D.N.Y. Mar. 30, 2026) ("A plaintiff cannot satisfy Rule 9(b) by filing 'a complaint in which defendants are clumped together in vague allegations.'").

In the AC, Plaintiffs only make general, grouped allegations as to FTS: that as one of several "Underwriter Defendants" or "Defendants," FTS "underwr[ote] and structure[d] the Notes . . . , disseminat[ed] the misstatements and omissions in the Offering Memorandum *to its customers*, and *solicit[ed] its customers* to purchase the Notes in reliance on those misstatements and omissions . . . ."  (AC ¶ 246 (emphasis added); *see id.* ¶ 82).  But despite being placed on notice as to the fatal deficiencies of group pleading in FTS's Supplemental Memorandum of Law (ECF 84 at 1-2, 4-10), Plaintiffs still fail to identify *any* customer to whom FTS disseminated offering materials or otherwise solicited in connection with the subject Trusts, much less any of the Plaintiffs who could have reasonably relied on any action by FTS.  The lack of legally required specifics is not surprising—FTS did not "underwrite" the notes; "structure" the notes; "disseminate" Offering Memoranda to any of its customers; or otherwise "solicit" any customer

-14-

to participate in these Trusts.  Plaintiffs concede as much by failing to identify any Plaintiff that purchased any note from, or otherwise interacted in any way with, FTS.  Accordingly, the claims against FTS must be dismissed.

## CONCLUSION

For the foregoing reasons and those set out in the MTD, the Amended Complaint should be dismissed with prejudice.

Dated:  April 23, 2026

Respectfully submitted,

/s/ *Robert A. Sacks*

Robert A. Sacks
Jonathan S. Carter
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel:  (212) 558-4000

*Attorneys for JPMorgan Chase Bank, N.A.*
*and J.P. Morgan Securities LLC*

/s/ *Robert J. McGahan*

Robert J. McGahan
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, N.W., Suite 1350
Washington, DC 20036
Tel:  (202) 719-8298

Rebeccah Lynn Bower
BRADLEY ARANT BOULT CUMMINGS LLP
Promenade Tower
1230 Peachtree Street NE, Suite 2100
Atlanta, Georgia 30309
Tel:  (404) 868-2806

/s/ *Jenna M. Dabbs*

Jenna M. Dabbs
Sean Hecker
Marshall L. Miller
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel:  (212) 763-0883

*Attorneys for Fifth Third Bank, N.A.*
*and Fifth Third Securities, Inc.*

/s/ *Jeffrey T. Scott*

Jeffrey T. Scott
Jonathan M. Sedlak
Jacob E. Cohen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel:  (212) 558-4000

*Attorneys for Barclays Bank PLC*
*and Barclays Capital Inc.*

-16-